# Krout's Appeal.

1. An intestate left no issue, brothers nor sisters, but left nephews and nieces, and the children of deceased nephews and nieces. *Held,* that the nephews and nieces took the intestate's estate per capita, and the children of those deceased such shares as their respective parents would have taken.

2. Under the Act of April 27th 1855 (Intestates), grandchildren of deceased brothers and sisters take by representation, i. .e. such share as their parents if living would have taken.

3. The Intestate Acts of 1833 and 1855 as to collaterals below brothers and sisters construed.

January 20th 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., absent. WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Bucks county:* No. 276, to January Term 1869.

The question in this case arose on the distribution of the personal estate of Esther Krout, deceased, showing the final administration account of her estate to be $1236.33. The auditor, E. Morris Lloyd, Esq., reported, "that Esther Krout died without leaving issue, and without leaving brothers and sisters, but only the issue of brothers and sisters; there survived her twenty-five nephews and nieces, and the issue of seven nephews and nieces deceased, who were the children of six brothers and sisters of the decedent. The question was, whether the fund for distribution should be originally divided into six shares—the number of brothers and sisters of decedent—and each of those six shares subdivided by the number of their respective representatives; or, whether it should be divided into thirty-two original shares, the number of nephews and nieces of decedent, and each share of a decedent nephew or niece subdivided among his or her respective representatives." He further reported, that "this distribution must be per stirpes and not per capita; that the original division must be into six shares, to be subdivided among the children and grandchildren of the brothers and sisters of the decedent, so that each brother's share may go to his descendants, and each sister's share to hers. Any other distribution than this, by commencing with nephews and nieces instead of with brothers and sisters, would present the strange anomaly of a distribution both per stirpes and per capita, which cannot be; it must either be the one or the other." He accordingly awarded amongst others, to Henry Krout, only child of a deceased brother of the intestate, one-sixth of the estate. Distribution was made to the other distributees upon the principles of his report. Exceptions were filed by other parties interested, the 2d and 3d of which were:—

2. The auditor erred in distributing the estate among the heirs at law per stirpes, when it should have been distributed among

the nephews and nieces "per capita," and the shares of the deceased nephews and nieces among their children per stirpes.

3. The auditor should have distributed the fund into thirty-two shares, giving to each of the living nephews and nieces of decedent one share, and dividing one share among the children of each deceased nephew and niece.

The opinion of the Orphans' Court on the exceptions was delivered by Chapman, P. J., who amongst other things said:—" A grand-nephew of the intestate will take what his parent would have taken. What his parent would have taken will depend upon the situation in which the other distributees stand toward the intestate. If they all stand in an equal degree, or would have stood in an equal degree, had he been living, then the *pro ratâ* rule of distribution must be applied as between him and them—they would be either brothers and sisters, or cousins, or both. But if he and the others stood in an unequal degree, or if there were a brother of the intestate living, the distribution must be per stirpes. Here there were six brothers and sisters; if one of them were living the estate must necessarily be divided into six parts, and the children of each parent, as a separate stock, would take among them the share of their parent; but when all six are dead leaving children, the division must be among them *pro ratâ*, for the act says the grandchildren are to take ' what their parents would have taken if living.' Hence there is no escape from the conclusion that all the children, whether living or dead, leaving children, are to be counted in determining the number of shares, and in this case there are thirty-two living, or have died leaving children. The act thus enumerates the shares where the descendants actually, or by its operation, stand in the relation to the intestate they do here. A parent's share might have been different had a brother or sister of the intestate been living, and in that case the conclusion of the auditor would have been correct; but if the legislature by a fiction treats a deceased parent as living, we must adopt it as a fact, so far as to ascertain his share." * *

" It will be observed by virtue of these provisions, the *living* grandchildren, all children being dead, take directly from the intestate, and not as a particular stock, tracing their right as such through a deceased parent, and the children of a deceased parent or grandchildren succeed by representation to his share. The section says ' *each* of the grandchildren shall receive *such share* as he or she *would* have received, if all the other grandchildren who shall then be dead, leaving issue, had been living at the death of the intestate, and so in like manner to the remotest degree.' Hence one grandchild is put on the same footing as are others, and the share of a deceased grandchild is counted in the same way. Viewing the intestate here as the grandfather and great-grandfather of the parties litigant, what would be the order of

distribution? *Each* of the grandchildren would receive such share as he or she would have received, if all the other grandchildren who were dead leaving issue had been living at the death of the intestate. Now the share assigned to each *living* grandchild determines the share of each of those who are dead, and that which the children of the dead succeed to by representation. The report is remitted to the auditor to be reformed agreeably to this opinion, and if there are any other heirs to include them in the distribution—the exceptions being sustained."

The auditor reformed his report according to the opinion of the court, awarding to Henry Krout $37.04, instead of $206.05, as in his original report. This report was confirmed, and Henry Krout appealed from the decree of confirmation, and assigned it for error.

*H. P.* and *G. Ross*, for appellant, cited Act of April 27th 1855, § 2, Pamph. L. 368, Purd. 564, pl. 26 ; Brenneman's Appeal, 4 Wright 115 ; Lane's Appeal, 4 Casey 487 ; Miller's Appeal, 4 Wright 390 ; Act of April 8th 1833, § 4, art. 3, Pamph. L. 316, Purd. 563, pl. 19.

*R. Watson* and *J. L. Dubois*, for appellees, cited Act of 1833, *supra*, § 4, art. 2 and 5, Purd. 563, pl. 18, 20 ; Ort's Appeal, 11 Casey 207 ; Miller's Appeal, Lane's Appeal, Brenneman's Appeal, *supra*.

The opinion of the court was delivered, February 4th 1869, by

THOMPSON, C. J.—By the Act of Assembly of 4th April 1797, 3 Sm. Laws 299, when nephews and nieces of the intestate became the distributees of the intestate, the rule of distribution was *per stirpes ;* the children representing their deceased parents who would have been entitled to the succession if living.

By the Act of the 8th April 1833, the provision on this subject is, that "if an intestate shall leave neither brothers nor sisters of the whole blood, but nephews or nieces living, the children of such deceased brother or sister, the real estate shall descend to, and vest in such nephews and nieces." By a subsequent provision in the statute, personal estate is to descend and be distributed in like manner. The rule of descent thus provided, it will be observed, is to the whole of a class, be they many or few generally and consequently equally, and not to a stock by representation. The distribution in such a case would necessarily be *per capita.*

This is undoubtedly the meaning of this provision ; the revisers say that they so intended, and that the change of the old rule of distribution, under the Act of 1797, was to conform the rule of distribution to nephews and nieces, to the rule in cases of distri-

bution to grandchildren, when they should be the class of distributees, under the intestate laws, which is *per capita*. For the views and reasons of the revisers, see 2 Parke & Johns. Dig. 782. This was our view expressed on this point, in Miller's Appeal, 4 Wright 387.

In the case in hand, the distributees are nephews and nieces, and the children of two deceased nieces. What is to be the rule of distribution in such a case?

The postulate from which the result must be worked out, is in the portion of the Act of 1833 quoted, where the descent is to nephews and nieces as a class. There the statute as a statute of distribution stops. Then in process of time came the enlarging statute of distribution of 27th April 1855, Pamph. L. 368, which provides that when the estate shall descend to, and be distributed among the grandchildren of deceased brothers and sisters, and the children of uncles and aunts, the distributees shall take by representation, "such descendants taking equally among them such share as their parents would have taken if living." In Brenneman's Appeal, 4 Wright 117, we decided that the children of deceased uncles and aunts take by representation, *per stirpes*. The section places grandchildren of deceased brothers and sisters on the same footing, and consequently the same rule applies to them, namely, that when they are distributees they take by representation, or *per stirpes;* that is to say, they are to take such share as their *parents if living would have taken*. The appellant in this case was the nephew of the intestate, and by the rule we have found to exist under the Act of 1833, he, if living, would have been entitled to the one thirty-second part of the estate. There were thirty-two nephews and nieces, and taking *per capita*, as the statute distributes to that class, the mother of the appellant would have taken if living, a thirty-second part. That, therefore, by the express words of the Act of 1855, descended upon and was distributable to her children, and they would inherit from the decedent, and take *per stirpes the share of their deceased parent*. This was the result at which the learned judge below arrived, and consequently he was right in overruling the auditor's views on the point. Lane's Appeal, 4 Casey 487, is to the same effect, when rightly understood. The provision in an unequal succession, in the 3d Art. of sect. 4 of the Act of 1833, in no way militates against the construction given to the 2d Art. It supports our construction given to the Act of 1855, taken in connection with the 2d Art., and renders the whole uniform and consistent in its application to the classes provided for. Where the intestate leaves brothers and sisters, and the children of deceased brothers or sisters, the latter take by representation the share their parent would have been entitled to if living; and so, as we have shown, the children of a deceased nephew or niece take by representa-

tion the share of their parents.   Thus the rule is consistent and uniform in cases of unequal distribution occasioned by unequal degrees of consanguinity, and where the distributees belong to different classes, or rather where the classes are intermixed.

The 8th section of the. Act of 1833, providing "that there shall be no representation admitted amongst collaterals after brothers' and sisters' children," has no bearing one way or the other on the case in hand.   Its application is to next of kin when they might inherit.   For these reasons the decree of the Orphans' Court is affirmed, and the appeal dismissed at the costs of the appellant.