## Eshleman's Appeal.    Gyger's Appeal.

1. In the distribution of an intestate's estate between a child and a grandchild, the grandchild takes subject to advancements to him and debts due by him.

2. In construing a statute the real intention will prevail over the literal sense of the terms.

3. If the expression of a statute be special but the reason general, the expression is deemed general.

4. An advancement is an irrevocable gift by a parent to a child of the whole or a part of what it is supposed the child will be entitled to on the death of the parent intestate.

5. In the distribution of a grandfather's estate, the grandchildren take by representation through their parent, if the descendants are in different degrees of consanguinity to the intestate; where he leaves grandchildren only they take *per capita.*

6. A distributee is not a competent witness in the distribution of a decedent's estate as to transactions in his lifetime.

7. Commissions at 2½ per cent. on real, and 5 per cent. on personal property, allowed to an administrator, the estate amounting to $75,000, and involving the usual trouble.

8. The late general enhancement of values is to be taken into consideration in estimating the reasonableness of commissions.

May 9th 1873.    Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Appeals from the Orphans' Court of *Lancaster county*, in the estate of John Gyger, deceased: Of May Term 1873, No. 91 and No. 86.

The decedent died intestate on the 12th of April 1870, leaving a large estate, consisting of real and personal property. His heirs at law were a daughter, Elizabeth G. Eshleman, and a grandson, Abijah D. Gyger, the only child of a deceased son, Jesse Gyger.

Administration of his estate was granted to Mrs. Eshleman. It is to be gathered from the auditor's report that the real estate of the decedent was sold by the administratrix. Her administration account was confirmed *nisi*, September 18th 1871; it showed in her hands a balance of $67,300.93.

One of the items of credit which she claimed was " commissions on personal property $2673, commissions on real estate $1047." Total $3720.

There were a number of exceptions filed to the account, of which the 4th was to the amount claimed for commissions.

The account was referred to A. H. Hood, W. Leaman, and E. H. Yundt, Esqs., as auditors for adjustment and distribution. With reference to the 4th exception the auditors said:—

" The commissions on the personal property do not exceed the customary rate of 5 per cent. The commissions on the proceeds of real estate sold are $10 in excess of 2½ per cent. Thompson, J., remarks in Skinner's estate, 17 Leg. Intel. 381, that the usual commissions to an executor are 2½ per cent. on sales of real estate

[Eshleman's Estate.]

and 5 per cent. on other receipts, and these should not be varied except for cause. The administration of the estate of the present decedent, appears to have been attended with the quantity of trouble, care and responsibility, which the settlement of intestates' estates ordinarily imposes. The auditors can see no reason for reducing the commissions under the fourth exception, except with respect to the $10 in excess of the 2½ per cent. on the sales of real estate, which are struck off, making the commissions allowed thereon, $1037."

Some of the other items excepted to were admitted by the accountant to be errors, and the account was corrected accordingly; with these corrections, the auditors reported the balance in the hands of the administratrix for distribution to be $74,659.93.

In ascertaining the precise amount for distribution the auditors allowed some unadjusted claims against the estate which had not yet been paid by the administratrix, charged the accountant with interest on the balance up to April 1st 1872, and after deducting costs, expenses of audit, &c., ascertained that the actual amount for distribution was $74,330.32.

On the hearing in relation to the distribution there were presented to the auditors accounts for two classes of claims against Abijah Gyger, in favor of his grandfather, the decedent, containing statements of charges against Abijah and advances to him— some entries made by the decedent " on a loose sheet of paper," and the others in numerous " bills, notes, checks and memoranda," preserved by the decedent with his securities and other valuable papers in a tin box, which was produced after his death from the vault of a bank where it had been deposited by him.

Abijah D. Gyger offered to testify in explanation of these items of charge against him; the auditors decided that he was not competent on the ground of interest, to testify as to matters occurring in the lifetime of the decedent, and that he was not within the exception of the Act of April 15th 1869. They took the testimony of Mr. Gyger, but did not consider that portion of it which related to transactions in the decedent's life.

The auditors found that at the time of the death of the decedent, his grandson, Abijah D. Gyger, owed him $4571.30, and that the amount of advancements from the decedent to the grandson was $10,621.28, both which sums, amounting together to $15,192.58, they charged against his share of the estate. The distribution accordingly was :—

| | | |
|---|---|---|
| To Elizabeth G. Eshleman | . . | $44,761.45 |
| To Abijah D. Gyger | . . . | 29,568.87 |
| | | $74,330.32 |

A. D. Gyger filed exceptions to the report of the auditors.

1. The rejection of the exceptor's testimony.

3. The amount allowed by the account for commissions.

6. Allowing in the distribution the amount claimed as debts against the exceptor.

7. Allowing in the distribution the amount claimed as advancements to the exceptor.

The court (Livingston, P. J.) concurred with the report of the auditors except as to charging advancements against the exceptor.

In conclusion the judge said:—

"We are therefore of the opinion that the auditors erred in charging Abijah D. Gyger with advancements, alleged to have been made to him by his grandfather, in the distribution of his intestate grandfather's estate; and that they should have charged him with nothing but such debts due from him to his grandfather, as might have been recovered from him by his grandfather in his lifetime, or by the administratrix of his estate, after his decease. But, as this question was not raised distinctly before the auditors, and as their report shows they did not examine into, and discriminate between debts and advancements, with as much strictness and particularity or nicety as they would have used had this question been fully contested before them, we recommit the report to them to re-investigate the claims made by the administratrix of the estate of John Gyger, deceased, against Abijah D. Gyger, and report any further or additional testimony taken by them concerning the same, together with the distribution made by them after such investigation, to this court."

In their second report the auditors found that the amount of debts due by A. D. Gyger to the decedent was $4880.29. They found, also, that the balance due the estate, including the debts owing by A. D. Gyger, was $78,896.61, This sum they distributed as follows:—

To Elizabeth G. Eshleman, $39,443.30.

To Abijah D. Gyger (after deducting his indebtedness), $34,568.01.

Mrs. Eshleman filed five exceptions to this report of the auditors; the fifth was that the auditors had not charged against A. D. Gyger the advancements made to him.

A. D. Gyger filed an exception that the auditors charged against him the sum of $4880.29 as indebtedness by him to the decedent.

The court dismissed the exceptions and confirmed the second report of the auditors.

Mrs. Eshleman and A. D. Gyger severally entered appeals to the Supreme Court.

A. D. Gyger assigned for error:—

1. That the court confirmed the decision of the auditors in rejecting his testimony.

2. That the court confirmed the decision of the auditors in allowing the commissions which were credited to the accountant.

[Eshleman's Appeal.]

5. That the court confirmed the report of the auditors in charging the exceptor with $4880.29 as due by him to the decedent.

Mrs. Eshleman assigned for error :—

1. Deciding that in the distribution of the decedent's estate, A. D. Gyger, as grandson, was not liable to account for advancements.

2. Not confirming the first report of the auditors.

*B. F. Eshleman*, *D. G. Eshleman*, and *T. E. Franklin*, for E. G. Eshleman, referred to Act of April 8th 1833, sect. 16; 1 Br. Purd. 810, pl. 35, containing the substance of the 9th section of the Act of October 1794, 3 Sm. Laws 147. Under that section land of intestate was adjudged to a grandson : Walton *v.* Willis, 1 Dall. R. 351. The intention of the legislature was to make equality of distribution, which could not be done if advancements to a grandchild by a child dying before the intestate were not to be taken into account. The construction of an act should be to advance the intention of the legislature : *People *v.* Utica Insurance Company, 15 Johns. R. 358; 9 Bac. Abr. " Statute " I. 5, p. 246; 1 Kent's Comm. 462; Dwarris on Stat., 690–696. Grandchildren take by representation and are subject to the debts and advancements to their parents : Earnest *v.* Earnest, 5 Rawle 213; Hughes's Appeal, 7 P. F. Smith 180. " Children " is often construed to include " grandchildren:" Wyth *v.* Blackman, 1 Ves. Sr. 196; s. c. Ambler 555; Crawel's Trust, 8 De G., McN. & Gordon 480; Gale *v.* Bement, Ambler 681; Royle *v.* Hamilton, 4 Vesey 437; Haydon *v.* Wilshere, 3 T. R. 373; Osgood *v.* Lovering, 33 Maine 464. The claim of the grandchild is certainly no better than the child : 4 Ecc. Law 344, 345; Proud *v.* Turner, 2 P. Wms. 560; Phinney *v.* Phinney, 2 Vern. 638; Edwards *v.* Freeman, 2 P. Wms. 436; Wentz *v.* DeHaven, 1 S. & R. 314; Lamplugh *v.* Lamplugh, 1 P. Wms. 111, notes; Hill on Trustees 98; Loyd *v.* Read, 1 P. Wms. 608; Ebrard *v.* Dancer, 2 Chanc. C. 26. A grandfather may be considered *in loco parentis* to a grandchild : Toller on Exr's. 329, 330; Zeiter *v.* Zeiter, 4 Watts 214; Powis *v.* Mansfield, 3 Myl. & Cr. 359.

As to admitting Gyger's testimony they cited Mylin's Est., 7 Watts 67; Breneman's Est., 15 P. F. Smith 300; Karns *v.* Tanner, 16 Id. 300; Dellinger's Appeal, 21 Id. 425; McBride's Appeal, 22 Id. 480.

*S. H. Price* and *J. Landis*, for A. D. Gyger.

The opinion of the court in each appeal was delivered, July 2d 1873, by MERCUR, J.

### ESHLEMAN'S APPEAL.

John Gyger died intestate, leaving a daughter, Elizabeth G. Eshleman, and a grandson, Abijah D. Gyger, the only child of

his son, Jesse Gyger, who died during the life of his father. John was appointed guardian of Abijah. From time to time, after Abijah became of full age, John furnished him money and other property.

Upon the distribution of the estate of John between Elizabeth and Abijah, the question arises, whether the latter sustains such a relation to John as to be charged with the property given to him as an advancement. The precise question does not appear to have been hitherto considered by this court. If both the claimants were grandchildren of the intestate, so that they would take *per capita*, the doctrine of advancements made to them might not apply. Here, however, Abijah takes by representation: Purdon's Digest 807, pl. 14 (C).

Section 16 of the Act of April 8th 1833, Purdon's Digest 810, pl. 35, provides: that if any child of an intestate shall have any estate by settlement of such intestate, or shall have been advanced by him in his lifetime, either in real or personal estate, to an amount or value equal to the share which shall be allotted to each of the other children of such intestate, such child shall have no share of the real or personal estate of such intestate; and if such settlement or advancement be to an amount or value less than the share to which he would otherwise be entitled, if no such advancement had been made, then so much only of the real and personal estate of such intestate shall be allotted to such child as shall make the estate of all the said children to be equal, as near as can be estimated.

The manifest design of the law is to equalize the intestate's property among all his children. It is equally clear that it was not the design of the law-makers to put a grandchild upon higher ground than a child would occupy if living. It is true, the letter of the statute says, "if any child" shall have been advanced. In many cases, however, both in England and in America, it has been held that the word "child" may apply to, and include "grandchild." The English statute of 22 and 23 Car. II., ch. 10, from which our Act of April 8th 1833, *supra*, as well as all of our former acts, .relating to distribution, are derived, provides, that "if a child" shall be advanced; yet it is there held to extend to a grandchild, the father being dead: 1 Eq. Ab. 381, B., pl. 6; 382, B., pl. 8, 9, 10, 11. Grandchildren and great-grandchildren are all children, and come within that to certain purposes: Wyth *v.* Blackman, 1 Ves. Sr. 196. It is allowed by all, that if no children are in being, grandchildren would come in under the word children, and may be thereby described: 2 Vern. 106; s. c. Ambler 555. So grandchildren may take under the description of "children" in a will: Royle *v.* Hamilton, 4 Ves. 437. In a trust for children, it was held that grandchildren were entitled to participate: In re Crawel's Trust, 8 De G., McN. & Gord. 480.

[Eshleman's Appeal.]

In 4 Kent's Com. 419, in discussing the question of advancement to a child, it is said: In New Jersey the statute uses the word issue, which is a word of more extensive import than the word child ; though children, as well as issue, may stand in a collective sense for grandchildren, when the justice or reason of the case requires it.. It would have been better, however, if the statutes on this subject had been explicit, and not have imposed upon courts the necessity of extending by construction and equity the meaning of the word child, so as to exclude a grandchild who should come unreasonably to claim his distributive share, when he had been sufficiently settled by advancement.

In construing a statute, the real intention when accurately ascertained, will always prevail over the literal sense of terms: 1 Kent's Comm. 472. When the expression in a statute is special or particular, but the reason is general, the expression should be deemed general: Idem; People v. Utica Ins. Co., 15 Johns. 380 ; Whitney v. Whitney, 14 Mass. 92.

Under the Act of 1764, relating to the partition and valuation of the real estate of an intestate, providing that the eldest son or heir at law should have his election of taking the land at the valuation, yet it was held, where the eldest son had died before the intestate, that the eldest son of the deceased eldest son, had the same priority of election of taking the real estate of his intestate grandfather, that his father, if living, would have had: Walton v. Willis, 1 Dall. 351. So under the 22d section of the Act of 19th April 1794, where one died intestate, leaving sons and daughters, and also grandchildren, the children of the eldest son of the intestate, who had died in the lifetime of his father, it was held, where the words of the statute gave the priority of choice to the " eldest son," and was silent in regard to grandchildren, yet that they were within the equity of the act which intended to put them in the place of their father, if he had survived the intestate ; and therefore they were permitted to take the real estate of the intestate in preference to the eldest son then living: Hersha v. Brenneman, 6 S. & R. 2.

The general doctrine unquestionably is, that an advancement is an irrevocable gift by a parent to a child, of the whole or a part of what it is supposed the child will be entitled to upon the death of the parent, who afterwards dies intestate. The question, however, recurs, who is a child within the meaning and spirit of the statute relating to advancements? In Hughes' Appeal, 7 P. F. Smith 179, and in other cases there cited, it is held, that in the distribution of the grandfather's estate, the grandchildren take subject to advancements made to their father, and to such debts due by him to the intestate, as were recoverable when the estate descended. The reason given is, that they take not paramount to their father, but through him by representation. This, however, .

[Eshleman's Appeal.]

must be understood as applying to the facts in those cases. That is, where the intestate shall leave descendants in different degrees of consanguinity to him, the more remote of them being the issue of a deceased child, grandchild, or other descendants, and not where he leaves grandchildren only. In the latter case they would take *per capita*.

The clear intent and design of the statutes are to equalize the property of the intestate among his children. Where one of his several children has died during his life, leaving an only child, who the intestate has advanced after the death of his father, it seems to us the whole reason of the statute compels us to hold it an advancement. To do otherwise would work injustice to the surviving children and defeat that equal distribution which the statute was designed to secure. We believe the true exposition of the statute to be, as against a surviving child of the intestate, that Abijah takes, not only subject to advancements made to his father, and to such debts due by him to the intestate as were recoverable when the estate descended, but also subject to advances made to himself after the death of his father, and to such debts due by him to his grandfather as were recoverable when the estate descended.

For purposes of distribution, the intestate should be held, after the death of his son, as standing *in loco parentis* towards Abijah, and all the principles flowing therefrom should be applied.

We think, therefore, the learned judge erred in confirming the second report of the auditor, and the case must go back to have distribution made upon the principles we have declared.

And now, to wit, July 2d 1873, decree reversed, and the court is directed to send the case back to an auditor to to restate the account.

### GYGER'S APPEAL.

The opinion just read in Eshleman's Appeal, from the same decree, makes it unnecessary to consider all the errors assigned in this case.

The first assignment is the refusal to permit the appellant to testify in his own behalf. His object was to relieve himself from a portion of the claim of the estate of the intestate against him. He sought to testify to transactions which occurred during the life of the decedent. That mutuality or equality did not then exist between the parties, which is necessary to permit a party to testify in his own behalf. The parties are not within the proviso to the first section of the Act of 15th April 1869. The appellant was therefore rightfully excluded: Karns *v.* Tanner, 16 P. F. Smith 297.

The second is to the amount allowed the accountant as commissions. We cannot establish any inflexible rule. Much may depend upon the circumstances attending the settlement of the particular estate. The auditor found that the administration of

[Eshleman's Appeal.]

this estate "appears to have been attended with the quantity of trouble, care and responsibility which the settlement of intestates' estates ordinarily imposes." He therefore allowed the usual commission. The court confirmed it. It is no larger than has frequently been allowed to executors and administrators. The general enhancement of values within the last twelve years must not be wholly ignored in determining the reasonableness of commissions. The auditor and the court below, with all the facts before them, having concurred in what were reasonable commissions, we discover no good reason for disturbing that conclusion.

The appeal is dismissed at the costs of the appellant.