## Clement's Estate.  Scott's Appeal.

*French Spoliation Claims—Act Congress, Jan. 20, 1885.  Mar. 3, 1891.*

The Act of Congress of Jan. 20, 1885, inviting proof of claims on account of the French spoliations, regarded such claims not in the nature of heirlooms, but as choses in action that had passed or would pass to the legal representatives of the original sufferer; and title either by administration or by assignment was sufficient, and, except in the case of a surviving sufferer, was necessary to give a petitioner standing in the court of claims, and must be found by that court as part of the basis of any Congressional action upon the claim. No provision was made for proof of claims by next of kin. And when the Act of Congress of March 3, 1891, made an appropriation to pay the findings of the court of claims to an administratrix, such sum was intended not as a mere gift or gratuity but as a discharge of a debt or obligation.

*Distribution—Next of kin—Per stirpes—Decedent's estate.*

Under the proviso to the Act of Congress of 1891, that, "in all cases where the original sufferers were adjudicated bankrupts, the awards shall be made on behalf of the next of kin instead of to assignees in bankruptcy, and the awards in the case of individual claimants shall not be paid until the court of claims shall certify to the secretary of the treasury that the personal representatives on whose behalf the award is made represent the next of kin, and the courts which granted the administrations respectively shall have certified that the legal representatives have given adequate security for the legal disbursement of the awards," the legal representatives of a decedent, executors and administrators, are the recipients, upon the trusts declared by the law of the decedent's domicile.

An award to an administratrix *de bonis non* in the appropriation Act is therefore distributable to the persons who are entitled to participate in the distribution of the decedent's estate, and these are the persons who are described in the Act as the next of kin. Where the fund was claimed by grandchildren claiming under one child and by great-grandchildren claiming under another child of decedent, it was error to take decedent's grandchildren instead of his children as *stirpes* for the purposes of distribution.

Agued March 29, 1892.  Appeal, No. 140, Jan. T., 1892, from decree of O. C. Phila. Co., Oct. T., 1886, No. 194, adjudicating account of administratrix d. b. n. comprising proceeds

of French spoliation claims.  Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

The origin of the fund for distribution, under Act of Congress making appropriation for French spoliation claims, is shown at length in the opinion of the Supreme Court.  It appeared from the accountant's petition for distribution that Jacob Clement died in 1875, intestate, leaving a widow, since deceased, and four children, two of whom died intestate, unmarried and without issue.  The descendants of the other two were the claimants on the fund, viz.: four children of Samuel Clement, deceased, son of Jacob Clement, appellants, and thirteen grandchildren of Elizabeth Mary English, deceased, daughter of Jacob Clement, appellees.  The four children of Samuel Clement claimed the whole fund, as being the next of kin of Jacob Clement living March 3, 1891, the date of the appropriation Act of Congress; and if this claim was not allowed, then, as against the grandchildren of Elizabeth Mary English, one half of the whole fund.

The auditing judge, ASHMAN, J., decreed that the fund should be awarded to the next of kin of decedent living at the date of the appropriation Act, and treating decedent's grandchildren as *stirpes*, each entitled to one eleventh of the fund, awarded distribution accordingly, citing Knout's Ap., 60 Pa. 380.

Exceptions filed for the children of Samuel were (1) failure to award them the whole fund, or (2) at least one half of it, (10) and award of any part, or (11) more than one half, to the grandchildren of Elizabeth Mary English; which exceptions were dismissed by the orphans' court, in an opinion by HANNA, P. J., 488 Leg. Int. 474.

*Errors assigned* were (1, 2, 10, 11) dismissal of exceptions, quoting them; (3) distribution to decedent's lineal descendants living at date of appropriation Act, (4) and allowing such descendants whose immediate ancestors were not living at such date, to share with others who were in same degree with said ancestors; (5) in accordance with the intestate laws instead of to the next of kin; (6) to great-grandchildren of decedent whose parents were deceased at the date of the appropriation Act; (7, 8) not distributing to the nearest of kin to the exclusion of more remote descendants, claiming by rep-

resentation; and (9) failure to hold that, if distribution was to be made with respect to representation, it must be made by representation from the children of decedent.

*Samuel C. Perkins*, for appellants, cited Gardner v. Clarke, 20 Wash. L. R. 2, as deciding this case ; also on the general subject of these claims, Gray v. U. S., 21 C. of Cl. R. 340; Holbrook v. U. S., Ib. 434; Cushing v. U. S., 22 Ib. 1; Hooper v. U. S., 22 Ib. 408. That such appropriations are gifts or gratuities, Brooks v. Ahrens, 68 Md. 212; Burnand v. Rodocanachi, L. R. 7 Ap. Cas. 333; Emerson's Heirs v. Hall, 13 Peters 409; Gillan v. Gillan, 55 Pa. 430. As to next of kin, Brandon v. Brandon, 3 Swans. 312; Elmsley v. Young, 2 M. & K. 780.

*John G. Johnson* and *Geo. Sergeant*, with them *Chas. H. Sayre* and *A. A. Hirst*, for appellees, cited, as to next of kin, Slosson v. Lynch, 28 How. Pr. 417; McBride's Ap., 72 Pa. 481; McCurdy's Ap., 124 Pa. 100 ; Com. v. Cochran, 1 Adv. R. 152; Gray's Est., Ib. 186; Withy v. Mangles, 10 Cl. & F. 215; Merchants' Ins. Co. v. Hinman, 34 Barb. 410.

OPINION BY MR. JUSTICE HEYDRICK, July 13, 1882.

By an Act of Congress approved Jan. 20, 1885, 23 U. S. Stat. at Large, 283, it was provided : " That such citizens of the United States or their legal representatives as had valid claims to indemnity upon the French government arising out of illegal captures, detentions, seizures, condemnations and confiscations prior to " the 31st day of July, 1801, might " apply by petition to the court of claims within two years after the passage of this Act," and that court was required " to examine and determine the validity and amount of all the claims within the description above mentioned, together with their present ownership, and, if by assignee, the date of the assignment with the consideration paid therefor." It also required the attorney general of the United States to " resist all claims presented under this Act by all proper legal defences," and the court to " report to Congress for final action the facts found by it and its conclusions." But it was provided that " such finding and report should be merely advisory as to the law and facts found," and should not be " construed as committing the United States to the payment of any such claims."

Under the provisions of this Act the administratrix *de bonis non* of Jacob Clement, deceased, who appears to have been a sufferer from French spoliations, presented her petitions to the court of claims, and obtained "awards" presumably for the amounts hereinafter mentioned.

This was followed by an Act of Congress, approved March 3, 1891, 26 U. S. Stat. at Large, 862, whereby it was enacted: "That the following sums be and the same are hereby appropriated . . . . to pay the findings of the court of claims on the following claims for spoliations by the French, namely. . . . On the brig Experience, James Houston, master, namely Mary B. Scott, administratrix *de bonis non* of Jacob Clement, deceased, seventeen thousand one hundred and forty dollars and thirty-three cents. In the matter of the brig Polly, Hugh Smith, master, Mary B. Scott administratrix *de bonis non*, etc., of Jacob Clement, deceased, six thousand nine hundred and forty-seven dollars and sixty-five cents. . . . Provided that, in all cases where the original sufferers were adjudicated bankrupts, the awards shall be made on behalf of the next of kin instead of to assignees in bankruptcy, and the awards in the case of individual claimants shall not be paid until the court of claims shall certify to the secretary of the treasury that the personal representatives on whose behalf the award is made represent the next of kin, and the courts which granted the administrations respectively shall have certified that the legal representatives have given adequate security for the legal disbursement of the awards."

The moneys thus appropriated "to pay the findings of the court of claims on the claim of Mary B. Scott, administratrix *de bonis non* of Jacob Clement, deceased," were paid to her, and, less the expense of administration, constitute the entire fund for distribution; and the question is: To whom shall that fund be distributed?

The leading thought that pervades the Act of 1885 is that certain citizens of the United States had sustained losses by reason of the failure of their government to extend to them that protection which is due from government to citizen or subject, and that the United States owed these citizens or those who stood in their shoes some duty in respect to the losses so sustained. The obligation, it must be admitted, was an im-

perfect one, and Congress was careful, perhaps unnecessarily, to declare that nothing in the Act contained should be construed to commit the United States to the payment of the losses.

But, notwithstanding this declaration, further action in recognition of the undefined duty was clearly contemplated, and the sufferers from the French spoliations or their legal representatives or assigns were invited to incur expense in reliance upon that contemplated action. The claims to be presented were regarded by the Act not as something in the nature of an heir-loom, but as choses in action that had passed or would pass to the legal representatives of the original sufferer, and title either by administration or by assignment was sufficient, and, except in the case of a surviving sufferer, was necessary to give a petitioner standing in the court of claims, and must be found by that court as part of the basis of any Congressional action upon the claim. No provision was made for proof of claims by next of kin. It is, therefore, evident that when the administratrix of Jacob Clement had established his claim and her title to it, and Congress appropriated money " to *pay* the findings of the court of claims " in her favor it intended something more than a mere gratuity. To pay is to discharge a debt or obligation, not to bestow a gift. And the money was appropriated to be paid not only in discharge of the findings upon the claims of Jacob Clement, deceased, but to his administratrix in her fiduciary capacity as administratrix.

All this is as plain as language can make it; and, if there were nothing more, it is beyond question that the fund is to be regarded as part of the estate of Jacob Clement, and distributable accordingly. But it is contended that the proviso to the appropriation is evincive of an intent " to make a direct gift to the next of kin of Jacob Clement, the original claimant." If this be so, either the intent was futile for want of power in Congress to divert the estate of a decedent from the statutory course of administration, or the money paid was no part of the estate of Jacob Clement, deceased. If the latter proposition can be sustained, and it necessarily results from regarding the fund as a direct gift to the living next of kin, and not as accruing from the payment of a debt due to their ancestor, then Mrs. Scott received it as a trustee for the persons described as next of kin of Jacob Clement and not in

virtue of her office of administratrix, and the orphans' court have not jurisdiction to distribute the gift. But the proviso is as clearly evincive of an intent that the money appropriated to pay this claim should be paid to Mrs. Scott in her capacity of administratrix as is the language of the appropriation itself. While the clause, "the awards in case of individual claimants shall not be paid until the court of claims shall certify to the secretary of the treasury that the personal representatives on whose behalf the award is made represent the next of kin," standing alone, would indicate that the money was intended to be a gift to the persons described, and that by "personal representatives" were not meant representatives of the decedent, but representatives of the donees of Congress, the succeeding member of the sentence leaves no doubt that legal representatives of decedents, executors and administrators, were intended to be the recipients, and that upon the trusts declared and appointed by the law of their testator or intestate's domicil. They were to be persons to whom administration had been granted, and by whom security had been given. The courts in Pennsylvania, within the meaning of the proviso, which grant administrations, are the registers of wills of the respective counties. They have power to take security for the administration of decedent's estates according to the laws of Pennsylvania, and not otherwise, and have not power to take security for the execution of trusts over which neither they nor the orphans' courts have jurisdiction. The powers and jurisdiction of these officers may be presumed to have been known to Congress, and therefore when it required the secretary of the treasury to be certified by them "that the legal representatives have given adequate security for the legal disbursement of the awards," it must be presumed to have intended such security as they could take and certify. Requiring, then, as a condition precedent to the payment of the award, that the administratrix should have given security as such according to the laws of Pennsylvania, for the legal disbursement of the same, it must have intended that the disbursement should be in accordance with the condition of that security, viz., to the persons who were entitled to participate in the distribution of the estate of this administratrix's intestate, and these are the persons who are described in the Act

as next of kin. A similar use of the words "next of kin," may be found in the 11th section of the Act of April 26, 1855, P. L. 332.

The learned court below having determined, in effect, that the fund was not distributable as part of the estate of Jacob Clement, deceased, and having distributed it otherwise, it follows that its decree must be reversed.

The decree is reversed and the record is remitted with instructions to the court below to distribute the fund to and among the persons entitled to the personal estate of the accountant's intestate.