## Clement's Estate.    Bailey's Appeal.

*French spoliation claims—" Next of kin "—Act of Congress of March 3,* 1891.

The appropriation of money for the payment of French spoliation claims by the act of Congress of March 3, 1891, 26 St. at Large, 897, was a mere gratuity, and in making the gift Congress made it upon its own terms.

The right to the fund accrued in 1891, when the act was passed, to those who were at that time the next of kin of the original claimant. Assignees in bankruptcy were expressly excluded, and by necessary implication all other parties, assignees, devisees, residuary legatees, widows, surviving husbands, etc., were also excluded.

The act made no express provision for the ascertainment of the next of kin, but passed the fund to the administratrix de bonis non of the original claimant and therefore necessarily to the proper court of his domicile, but in so doing it dictated the scheme of distribution which was expressly to be to the next of kin, and by necessary implication such next of kin were to be ascertained by the law of the domicile. Clement's Estate, Scott's Appeal, 150 Pa. 85, reversed.

*Jurisdiction of orphans' court—French spoliation claims.*

The ascertainment of the next of kin to a decedent for purposes of distribution is within the general jurisdiction of the orphans' court, and this jurisdiction may be extended to include such ascertainment with reference to a fund which, though not a part of the decedent's estate, is, for the purpose of ascertaining who are to take, to be treated as if it were.

*Next of kin —Act of April 8, 1833.*

Under the act of Congress of March 3, 1891, an appropriation was made to pay a French spoliation claim to the next of kin of Jacob Clement. When the act was passed, all of the children of the claimant were dead,

but there were living four grandchildren, children of a son, and thirteen great-grandchildren, issue of seven deceased children of a daughter. *Held* that the four living grandchildren were each entitled to take\one eleventh in their own right as the nearest of kin, and one eleventh would go to the representatives of each of the deceased grandchildren per stirpes.

By the scheme of the act of April 8, 1833, § 2, art. 4, cl. B. & C., P. L. 316, when all of the descendants are in the same degree they take per capita in their own right and not by representation, but when there are descendants in different degrees, those in the class nearest to the intestate take in their own right, and the remoter ones take by representation from deceased members of the same class as the nearest survivors.

Argued Jan. 9, 1894.    Appeal, No. 139, July T., 1893, by Mary P. Bailey et al., children of a deceased child of Elizabeth M. English, daughter of Jacob Clement, deceased, from decree of O. C. Phila. Co., Oct. T., 1886, No. 194, dismissing exceptions to adjudication in estate of Jacob Clement, deceased.    Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ.    Reversed.

Exceptions to adjudication of administratrix's account.    (See Clement's Est., 150 Pa. 85, reversing original adjudication in 48 Leg. Int. 474.    See also opinion by Penrose, J., in 2 Dist. R. 341, following Clement's Est., 150 Pa. 85.)

The fund for distribution was the appropriation under the act of Congress of March 3, 1891, to the next of kin of Jacob Clement, deceased.

The auditing judge, Ashman, J., reported as follows:

"It was shown that the decedent, Jacob Clement, died Dec. 24, 1825, intestate, leaving surviving a widow, Hannah Clement (who was his second wife), and leaving three children by his first wife, viz., Charles Clement, Samuel Clement, and Elizabeth M. Clement (afterwards English).

"Hannah Clement, the widow, died Jan. 6, 1847, intestate, without issue, father or mother surviving.    William Alexander, the administrator of her estate, is dead.

"Charles Clement, a son, died May 3, 1832, intestate, unmarried, and without issue.

"Samuel Clement, a son, died in August, 1869, intestate, a widower, leaving five children, Mary B. Scott, Samuel T. Clement, Henrietta Wilson, Elizabeth T. Clement, and Jacob Clement.

" Of these Jacob Clement died April 5, 1870, leaving a widow, Mary A. Clement, but no issue. He died intestate.

"Elizabeth M. English, the daughter, died Aug. 7, 1873, leaving a will, of which Gustavus English was executor. By this will she gave her residuary estate in equal shares to her children, James L., Charles, Gustavus, and Alfred English, and Elizabeth Williams.

" James L. English died May 29, 1889, leaving a will constituting his daughter, Eliza M. E. Hartley, sole devisee and legatee.

" Charles English died prior to 1876, a widower, intestate, leaving four children, Mary, Gustavus, and Charles English, and Helen E. Latham.

" Gustavus English died March 28, 1888, a widower, leaving one son, Chancellor C. English. He constituted the Pennsylvania Company for Insurances on Lives, etc., executor and testamentary trustee of his residuary estate.

" Alfred English died Feb. 21, 1889, intestate, a widower, and leaving surviving two children, Lilian E. Sergeant and Charles D. English. Charles D. English and George E. Sergeant are administrators of his estate.

" Elizabeth Williams died Aug. 29, 1873, intestate, leaving surviving a husband, Reed A. Williams, who died May 10, 1877, and three children, Reed A. Williams, Jr., Clement N. Williams, and Annie E. W. Morgan. Reed A. Williams, Sr., left a will giving the residue of his estate to the said three children equally, the share of Mrs. Morgan to be held in trust by the Philadelphia Trust, Safe Deposit and Insurance Company. His said two sons are his executors.

" One third of the fund will be awarded to the administrator d. b. n., when appointed, of the estate of Hannah Clement, deceased (the widow of the decedent).

" One third of two thirds will be awarded as the share of each of the children of the decedent; and the distribution will be made directly to the surviving parties, where an original distributee is dead, as provided by the readjudication, except in the case of the share of any party who died within five years preceding the date of the award by Congress.

" The share of Jacob Clement, Jr. (son of Samuel T. Clement, and grandson of the decedent), will be awarded to his widow,

Mary A. Clement.   The said Jacob Clement died in South Carolina, but domiciled in West Virginia.   By the law of the domicile the widow, where there was no issue, took all of her husband's personal estate.   In 1882 an act was passed depriving the widow of any share if kindred of the husband, however remote, survived.   The interest of the widow in this instance vested at the death of her husband, and was, therefore, unaffected by the act of 1882."

Exceptions to the adjudication, filed by appellants, children of a deceased child of Elizabeth M. English, were dismissed by the court.

*Errors assigned* were dismissing exceptions, quoting them.

*Leonard Myers, A. A. Hirst* with him, for appellants, cited: Wetdrill v. Wright, 2 Ph. Ec. 243 ; Thomas v. Baker, 1 Lee Ec. 341 ; 3 Wms. Exrs. 462, 466 ; Elwes v. Elwes, 2 Lee Ec. 573 (App.,) ; Gill's Goods, 1 Haggard, 341 ; Tucker v. Westgarth, 2 Add. Ec. 352 ; West & Smith v. Willby, 3 Ph. Ec. 381 ; Kooystra v. Bayskes, 3 Ph. Ec. 531 ; 1 Woerner's Am. Law of Adm., p. 534 ; Leverett v. Dismukes, 10 Ga. 98 ; 2 Eq. Cas. Abr. 423, pl. 5 ; Ib. 425, pl. 15 ; Schouler's Exrs. & Admrs., p. 172 ; Cutler v. Quince, 2 Hayward, 60 ; Curtis v. Williams, 33 Ala. 570 ; Long v. Easby, 13 Ala. 239 ; Lentz v. Pilert, 60 Md. 296 ; Bradley v. Bradley, 5 Redf. 512 ; Wood's Ap., 55 Pa. 332 ; Adams v. U. S., 26 Ct. Cl. 295 ; Clement's Est., 150 Pa. 89.

*Geo. Sargeant* and *Samuel C. Perkins, Charles H. Sayre* with them, for appellees, cited : Gillan v. Gillan, 55 Pa. 430 ; Gardiner, Admr., v. Clarke, 20 Wash. Law R. 2 ; Gray v. U. S., 21 Ct. Cl. R. 344.

OPINION BY MR. JUSTICE MITCHELL, March 26, 1894 :

This case has suffered somewhat from its intricacy and its unusual character.   The important facts require to be briefly restated.   The act of Congress of 1891 awarded to the administratrix of Jacob Clement, on account of his losses by the French Spoliations, two sums, the net proceeds of which constitute the fund now in court for distribution.   At the date of the act

Jacob Clement was of course dead, and all his children were dead.  There were living however four grandchildren, children of a son Samuel, and thirteen great-grandchildren, issue of seven deceased children of a daughter, Mary English.  The questions to be determined were who were the next of kin meant by the act of Congress, and in what proportions were they to take.  Grandchildren were the nearest in blood to Jacob of any parties living, and the learned court below therefore treated all the grandchildren, living and dead, as a class of propositi, those living taking per capita in their own right, and the issue of those dead taking per stirpes in the right of their parents.  From the distribution made in accordance with this view the four living grandchildren appealed, claiming, first, that next of kin in the act of Congress meant nearest in blood according to the common law, and therefore that the four living grandchildren were entitled to the whole fund to the exclusion of the descendants of those deceased; and, secondly, the appellants claimed that if the principle of representation should be recognized at all, it should begin a step farther back, with the children of Jacob, and as there were but two children, a son and a daughter, who had living representatives at all, the four grandchildren who were children of the son, should take one half of the fund, instead of four elevenths which they got under the view of the orphans' court.  Neither of these contentions was specifically sustained, but the decree was reversed on the grounds, somewhat too broadly expressed, that the act of Congress contemplated a succession of next of kin from the person himself on whose account the award was made, and that therefore the fund should be distributed as part of Jacob Clement's estate.  The case thus decided is reported as Clement's Est., 150 Pa. 85.  The learned court thereupon proceeded to reopen the case and ascertain the course of devolution of Jacob Clement's actual estate, and dispose of the present fund in the same way.  From the distribution accordingly made, the present appellants, great-granddaughters of Jacob Clement, were entirely excluded, because under the will of their grandmother, Mrs. English, her residuary estate went to her five children living at her death.  The assignment of error to this exclusion brings up the whole subject anew of the intent of the act of 1891 as to the persons who were to take, and their pro-

portionate shares.  Further consideration, and better acquaintance with the whole case, have convinced us that our first views as expressed in 150 Pa., supra, are not sustainable, and that that case must be overruled.

The fund was a pure gratuity from Congress, though it had a moral claim back of it that was the moving cause of the gift. It is part of the public history of the country that for more than three quarters of a century the claims had been pressed, both houses of Congress had twice recognized them, though Presidents Polk and Pierce had vetoed the acts, and the general consensus of jurists and historians had settled down into a conviction that the claimants had been wronged by acts admitted by the French government to give rise to valid obligations to make reparation, that the United States had yielded their right of reclamation for these acts in return for other considerations from France, and that the refusal or delay in making payment of the obligations thus become a duty, had long been a reproach to the national good faith.  In 1885 Congress again took up the subject, and this time the President concurring, passed an act to authorize the court of claims to "examine and determine the validity and amount of the claims . . . . together with their present ownership, and if by assignee, the date of the assignment with the consideration paid therefor." But this was to be a mere advisory report for the information of Congress, and it was expressly enacted that "nothing in this act shall be construed as committing the United States to the payment of any such claim."  The court of claims having favorably reported on the claim of Jacob Clement, Congress passed the act of March 3, 1891, 26 Stats. at Large, 897, under which the present fund was received by the accountant.  By this act the money was awarded to Mary B. Scott, administratrix de bonis non of Jacob Clement, and it was provided that "in all cases where the original sufferers were adjudicated bankrupts the awards shall be made on behalf of the next of kin instead of to assignees in bankruptcy; and the awards in the case of individual claimants shall not be paid until the court of claims shall certify to the secretary of the treasury that the personal representatives on whose behalf the award is made represent the next of kin, and the courts which granted the administrations respectively shall have certified that the legal representatives

have given adequate security for the legal disbursement of the awards."

This as already said was a pure gratuity. There was no right in any one which could be enforced, or which had any recognition at all in law. Congress therefore in making the gift were free to make it to whomsoever they chose, and upon whatsoever terms. It was made to the next of kin, and the intent that it should go to them in their own right as standing in the place of the original claimant is apparent throughout this act, as well as the preliminary act of 1885. Assignees in bankruptcy were expressly excluded, and the personal representatives were not to get the money until it should be certified to the Secretary of the Treasury that they represented the next of kin. By unquestionable implication all other parties, assignees, devisees, residuary legatees, widows, surviving husbands, etc., are also excluded. The right to the fund accrued in 1891 to those who were then the next of kin. That was the inception of the right, and those who were then dead never acquired any interest of any kind in the fund, and of course could transmit none by will or otherwise. It never was in fact part of Jacob Clement's estate, nor of his children's, nor of his grandchildren's who died before 1891. Nor was it the intent of Congress that it should be so considered, for if it was first made de jure a part of Jacob Clement's estate then the power of Congress to shut out the vested property rights of assignees, creditors and others whose claims upon the estate were fixed by law would be at least extremely doubtful. There was not only no such intent, but such construction was carefully guarded against.

The act made no express provision for the ascertainment of the next of kin, or of the proportions in which they were to take. As a matter of convenience, instead of ascertaining the facts and settling the question of distribution that we have now before us, or committing that duty to the Court of Claims, the act passed the fund to the administratrix de bonis non of the original claimant and therefore necessarily to the proper court of his domicile, but in so doing it dictated the scheme of distribution, which was expressly to be to the next of kin, and by necessary implication such next of kin were to be ascertained by the law of the domicile. The "legal disbursement" of the awards, for which the courts that granted the administrations

were to require adequate security, can only mean disbursement according to the law of the tribunal.   As was very well said by Ashman, J., in the first adjudication in the court below, " The award by the act to the administratrix of the decedent . . . . designated the person whose losses were the efficient motive for the gift and provided an agent for the distribution of the fund; but it pointed out the decedent not as the person to whose estate the fund was awarded, but simply as the means of identifying the proposed recipients of the gift."

The question of the jurisdiction of the orphans' court, under this construction of the act, was not raised in the case, but it would not be insuperable.   The ascertainment of the next of kin to the decedent, for purposes of distribution, is within the general jurisdiction of the court, and there would be little if any stretch of it in including such ascertainment with reference to a fund which, though not part of the decedent's estate, was, for the purpose of ascertaining who were to take, to be treated as if it were.

The fund therefore being a gift to the next of kin, vested, at the date of the act, in those then living who were the next of kin to Jacob Clement, according to the law of Pennsylvania. The appellants were his great-granddaughters, and as such were entitled to participate in the distribution.   The facts bring the case within the express words of the intestate act of April 8, 1833, sec. 2, art. 4, cl. B., P. L. 316, where there are no surviving children, but grandchildren and the issue of deceased grandchildren, " each of the grandchildren . . . . shall receive such share as he or she would have received if all the other grandchildren, who shall then be dead leaving issue, had been living at the death of the intestate," and by clause C the issue of such deceased grandchildren are to " take by representation of their parents respectively, such share only as would have descended to such parent if they had been living at the death of the intestate."   By the scheme of this act when all the descendants are in the same degree they take per capita in their own right and not by representation, but when there are descendants in different degrees, those in the class nearest to the intestate take in their own right, and the remoter ones take by representation from deceased members of the same class as the nearest survivors.   This is the plain meaning of the act, and it

has been so declared in Krout's Ap., 60 Pa. 380; Eshleman's Ap., 74 Pa. 42 (48), and Person's Ap., 74 Pa. 121. Distribution in the present case therefore should be made to the next of kin of Jacob Clement living on March 3, 1891, to be ascertained by the law of Pennsylvania in the same manner as if the fund had been part of the estate of said Jacob. The four living grandchildren will therefore each take an eleventh in their own right as the nearest of kin, and an eleventh will go to the representatives of each of the deceased grandchildren per stirpes. This was the distribution made first by the learned court below, and reported in 150 Pa. 85, which maturer consideration convinces us should have been affirmed.

As this appeal results in a re-distribution to the advantage of all parties entitled under it to share in the fund, it is only just that the expenses should be borne in common, and that they should include the counsel fees of appellants.

Decree reversed, and record remitted for re-distribution in accordance with this opinion. The costs of this appeal to be paid out of the fund, and to include a reasonable counsel fee to appellants, to be fixed by the court below.