## Jayne's Estate.

The facts appear from the following extract from the adjudication of

SINKLER, J., Auditing Judge.—David Jayne died March 5, 1866, and the trust arises under his will, whereby he gave his residuary estate in trust during the lives of his children, Mary De Witt Eshelman, Matilda Walker Jayne, Hannah Sheppard Jayne, Laura Jayne, De Witt Jayne, Henry La Barre Jayne, Horace Jayne and Bertha Jayne, and of his grandchildren, David Jayne, Harry Jayne, Hannah Eshelman and Mary Eshelman, and the life of the survivor of his said grandchildren, for certain purposes as fully set forth in his will.

Hannah S. Eshelman, a granddaughter, the sole survivor of the children and grandchildren above named, died April 28, 1930, whereupon the trust terminated.

Two questions come before the Auditing Judge: First, the accountants request an allowance of $25,000 for compensation "out of the principal of the business, the trust having terminated." The executors and trustees named by the last paragraph of the will have long been deceased, and the present accountants were appointed by this court. Therefore, the award to them is not prohibited by the act of assembly, which does not permit the payment of commissions to trustees who have been paid commissions as executors. The parties have agreed that the claim for compensation be allowed in the sum of $10,000, and an award will be made to the trustees in that amount, according to the agreement. It appears from the record that the estate owned and conducted the business of D. Jayne & Sons, manufacturing chemists. The petition for distribution asks that the payments be awarded out of the principal of the business. This, it is assumed, is the business of D. Jayne & Sons, and an award is made accordingly.

The second question to be decided relates to the distribution of the principal of the estate upon the termination of the trust. At this time all of the children of the testator are deceased, likewise all the grandchildren who are named as life tenants and upon whose lives the continuance of the trust

depended. They are survived by certain other grandchildren and issue of deceased grandchildren.

Three plans of distribution are before us: First, that the corpus be divided into twelve shares, based upon the number of grandchildren of the testator and issue of deceased grandchildren; the latter to take the parent's share. Second, that distribution be made *per capita* to the grandchildren and great-grandchildren, that is, children of grandchildren who are deceased. Third, that the grandchildren and great-grandchildren of the testator take by representation through the testator's children.

Briefs of argument have been presented to me in support of the three respective plans of distribution.

The clause of the will to be construed is as follows:

"And after the death of the survivor of my said children before named, and the death of the survivor of my said grandchildren, before named, it is my will that the whole of my estate, real, personal and mixed, in the hands of my Executors at that time, less proper costs and charges, and the expenses of this trust, shall be distributed to and among, and I hereby give, bequeath, and devise the same to my grandchildren and great grandchildren, and the issue of any such as are deceased, living at the time of the decease of the survivor of said named children or grandchildren, in the same shares or purparts as they would have taken under and by the intestate laws in force in the State of Pennsylvania at the present time, such issue taking equally the share their parents would have taken yet not as by descent, but as by purchase under the limitations of my Will."

In favor of the third plan of distribution, the general rule of interpretation is relied upon that where a gift is given to those who would take under the intestate laws, the heirs and next of kin are to be determined as of the date of the testator's death, unless a different intent is plainly manifested by the will: Buzby's Appeal, 61 Pa. 111; Stoler's Estate, 293 Pa. 433; Whiteside's Estate, 302 Pa. 452. This general rule of construction is undoubtedly correct, is sustained by the authorities just cited, and by the other cases relied upon by counsel as set forth in their brief of argument. In my opinion, the phraseology used by the present testator indicates plainly a different intent. The time for distribution is definitely fixed, that is, the death of the survivor of certain individuals designated in the will, who were children and grandchildren of the testator, and the estate is given to grandchildren and great-grandchildren and the issue of such as are deceased, "living at the time of the decease of the survivor" of the individuals who are named as life tenants, and distribution is directed to be made in such shares as the distributees would have taken under the intestate laws in force in Pennsylvania "at the present time." This means the date of the testator's death.

In support of the first plan of distribution, Wood *v.* Schoen, 216 Pa. 425, is cited, in which case a remainder upon the death of the life tenant was given to those who would be entitled thereto under the intestate laws of the state. The Supreme Court held that the will gave a contingent remainder to those who at the time of distribution were the next of kin of the testator and entitled to take as if the testator had died intestate at the moment of the death of the survivor of the life tenants.

In the present case, the time for distribution is manifestly fixed by the will as the date of the death of the survivor of the life tenants and not the date of the death of the testator.

Having so determined, it is necessary to decide whether the estate is to be distributed *per capita* between the grandchildren and the issue of deceased

grandchildren who are to take *per stirpes*, or whether it is to be distributed among all the surviving issue of the testator who are grandchildren and great-grandchildren, *per capita*. In my opinion, the distribution should be made among the living grandchildren and the issue of deceased grandchildren by representation. The estate should be divided into twelve parts, being the number of grandchildren either living or dead leaving issue, each surviving grandchild to receive one-twelfth and the great-grandchildren to take their respective parents' share.

The Act of April 8, 1833, P. L. 315, section 2, article IV, paragraph B, provides that if there be no children of an intestate, each of the grandchildren shall receive such share as he or she would have received if all the other grandchildren who are then dead leaving issue had been living at the death of the intestate, and so in like manner to the remotest degree; and paragraph C provides that in such case the issue of such deceased child, grandchildren or other descendant shall take by representation such share only as would have descended to such parents if they had been living at the death of the intestate.

This act has been construed in Krout's Appeal, 60 Pa. 380, Eshleman's Appeal, 74 Pa. 42, and Person's Appeal, 74 Pa. 121. Under the provisions of the act just cited and the cases interpreting the act, those in the class nearest to the decedent take in their own right and those more remote take by representation from deceased members of the same class as the nearest survivor. This plan of distribution seems so manifestly the correct one under the provisions of the testator's will, the Intestate Act in force at the time of his death and the decisions construing the same, that no further discussion seems necessary.

*J. Edgar Wilkinson*, for exceptants.

*Clinton W. Frontz* and *W. James MacIntosh*, contra.

VAN DUSEN, J., November 13, 1931. — After the termination of the life estates, the principal is to go to living grandchildren and great-grandchildren and the issue of any who are deceased. The proportions are to be determined by the intestate law in force at the time of the making of the will, which was the Act of 1833. The settled construction of that act is that where there are grandchildren and great-grandchildren, the grandchildren take *per capita* in their own right, and the great-grandchildren by representation of the deceased parent; and the Auditing Judge so awarded.

The exceptants are the children of a grandchild who was the only offspring of one of the six children who left issue surviving the life tenants, and they claim that the stirpital distribution should go back to the children of the testator for its origin, and that they take one-sixth between them. As the remaindermen begin with grandchildren and not children, we cannot see why this should be. It is argued that the remainder is vested rather than contingent. We do not agree with this, but even if it was so, we do not see why the result which is claimed should follow. If it is vested, it is vested in grandchildren, subject to be divested by their deaths before the time of distribution without issue. The will says "living." Twelve grandchildren survived or left surviving issue, and the estate would still be divided into twelfths as the Auditing Judge awarded. There is an alternative contention for division *per capita* among the surviving grandchildren and great-grandchildren; but this utterly ignores the direction to divide according to the intestate laws.

The exceptions are dismissed and the adjudication is confirmed absolutely.