Turbett Township Overseers of the Poor, Appellants, *v.* Port Royal Borough Overseers of the Poor.

*Poor laws—Settlement—Widow—"Unmarried person not having a child"—Service.*

Where a widow whose husband has been dead for ten years and whose only child, a daughter, has been married and living with her husband for ten years, hires and serves in a poor district for eight years, she thereby gains a settlement, as an "unmarried person not having a child."

The Act of June 13, 1836, sec. 9, par. 5, P. L. 539, providing the method by which a settlement may be acquired "by any unmarried person, not having a child," is to be construed as the similar English statute was construed to the effect that if such person has no child that can be a burden to the parish in consequence of his acquiring a settlement there, he shall be considered as not having a child within the meaning of the statute.

*Statutes—Construction.*

The effects and consequences of the proposed construction of a law, as well as its reason and spirit, will be looked into in determining the legislative intent, which is the criterion by which all acts must be construed. Hence, if there is room for construction, the court will prefer that construction which is most consonant with the purpose for which the act was passed.

Argued March 12, 1907. Appeal, No. 19, March., 1907, T. by plaintiff, from decree of Q. S. Sept. T., 1906, No. 1, refusing order of removal in case of Turbett Township Overseers of the Poor v. Port Royal Borough Overseers of the Poor. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Petition for order of removal. Before SHULL, P. J.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was refusal of order of removal.

*J. N. Keller*, for appellants.—When the reason of the law
ceases so does the law itself, for reason is the soul of the law,
and when the reason of any particular law ceases, so does the
law itself: Nice's App., 54 Pa. 200 ; Com. v. Fraim, 16 Pa. 163.

It has been held that a mother with a bastard child can gain
a settlement under this clause, because the settlement of such
bastard is the settlement of the mother at the time of its birth,
and the bastard can acquire no other settlement obtained by
the mother after its birth: Buffalo Twp. v. Lewisburg Boro.,
1 Pa. C. C. Rep. 121 ; Overseers of Forest City v. Overseers
of Damascus, 176 Pa. 116.

So it was held that a widower with a child who is emanci-
pated is a person not having a child, and may, therefore, gain
a settlement by hiring and service : Rex v. Cowhoneyborne,
10 East, 88 ; Rex v. Uckfield, 5 M. & S. 214.

*F. M. M. Pennell*, of *Atkinson & Pennell*, for appellees.—
This case is ruled by the decision of the Supreme Court in the
case of the Directors of the Allegheny County Home v. Over-
seers of South Buffalo Twp. : 26 Pittsburg Legal Journal, 115.

When the words of a statute are plainly expressive of an
intent, the interpretation must be in accordance therewith :
Bradbury v. Wagenhorst, 54 Pa. 180 ; Penna. R. R. Co. v.
Pittsburg, 104 Pa. 522, 555.

OPINION BY RICE, P. J., May 13, 1907 :

Cely McAlheney, a widow, whose husband has been dead for
ten years and whose only child, a daughter, has been married
and living with her husband for ten years, hired and served in
the poor district of Port Royal borough for eight years prior
to June 17, 1905. The question is, whether she gained a set-
tlement thereby.

The act of 1836 provides that a settlement may be gained
in any district " by any unmarried person, not having a child,
who shall be lawfully bound or hired as a servant, within such
district, and shall continue in such service during one whole
year :" Act of June 13, 1836, sec. 9, par. 5, P. L. 539. This
is substantially the same as a clause of sec. 17 of the act of
March 9, 1771, 1 Sm. L. 332, relative to the same subject, and,
like many other provisions of the statute, was evidently taken

from the English statute, 3 W. & M.; c. 11, s. 7.  By that enactment it was provided that, " if any unmarried person, not having a child or children, shall be lawfully hired into any parish or town for one year, such service shall be adjudged and deemed a good settlement therein."  This section was construed by the English courts to mean, that if such person " has no child that can be a burden to the parish in consequence of his acquiring a settlement there, he shall be considered as not having a child within the meaning of the statute : "  The King v. Inhabitants of Uckfield, 5 Maule & Selwyn, 214; Anthony v. Cardigan, 2 Bott's Poor Law Cases, 194 ; 3 Burn's Justice, 411 ; The King v. Inhabitants of Cowhoneyborne, 10 East, 288.  To illustrate the application of the clause as thus construed, we quote from the opinion of Lord Ellenborough in the last cited case: " The daughter having been originally placed, when an infant, by her father in her uncle's family, continued to live with her uncle after she became of age as part of his family; receiving no assistance from her father, and being at liberty to depart from her uncle's when she pleased, and to go where she chose.  She was of age, living apart from her father, and having her support from sources independent of him, and was at liberty to quit her uncle when she pleased, as she herself considered.  If this be not emancipation, it would be difficult to say what is so, and when it can take effect.  Then if she were emancipated after she came of age, it follows that the father, by the construction which has been put upon the statute of King William, gained a settlement by a subsequent hiring and service for a year in Teddington as ' an unmarried person and not having any child.' "

Our statute differs from the English statute in that time is predicated of the service and not of the contract, and consequently what is required seems to be no more than a continuance in hired service for a year: Heidleberg v. Lynn, 5 Wharton, 430.  But so far as concerns the qualifications of the person to gain a settlement by hiring and service, the provision of our statute seems to have been copied from the English statute.  There are many decisions of courts outside of this commonwealth to the effect that where congress or the legislature of a state enacts a statute which is a transcript of an English act, that has received a known and settled construction by the courts of that country, that construction at the time of such enactment

is to be deemed as accompanying and forming an integral part of the same : Endlich on Interpretation of Statutes, sec. 371.   It is not asserted that the proposition has been unqualifiedly established in Pennsylvania, nor, if it has been, that this would be a proper case for application of the general rule ; but it is safe to say that the adoption of this particular statutory provision without change furnishes ground for persuasive argument that the legislature of 1836 had in contemplation the settled construction that had been placed upon it years before by the English courts, and hence that those decisions are entitled to very great weight.

In prescribing the conditions upon which a settlement may be gained by hiring and service, why should the legislature make a distinction between an unmarried person, who has no offspring, and an unmarried person, who has a married daughter that has removed from the domicile of the parent, acquired another settlement, become the head of another family, and cannot gain a derivative settlement in the district to which the parent thereafter removes ?   Such discrimination would be purely arbitrary, and no reason can be conceived for presuming that the legislature intended to make it, unless it be that the word "child" has a fixed and unvarying meaning, and therefore the use of the words "not having a child" precludes every other presumption that might be suggested.   But the word "child" has many meanings besides the primary one, and in determining which one is to be selected in the construction of a statute, regard must be had to the connection in which it is used.   For example, in the construction of section 16 of the Act of April 8, 1833, P. L. 249, it was held that the provisions in relation to advancement, which in terms are limited to the case of "any child of the intestate," apply not only to children, but to grandchildren who have been advanced : Eshleman's Appeal, 74 Pa. 42; Storey's Appeal, 83 Pa. 89.   This conclusion was put upon the ground that in construing a statute the real intention will prevail over the literal sense of the terms ; that the manifest design of the law is to equalize intestate's property among all his children, and that it is equally clear that it was not the design of the lawmakers to put a grandchild upon a higher plane than a child would occupy if living.   Many other illustrative cases might be cited.   Indeed, in the con-

struction of this very section of the act of 1836, it has been held that the immediate illegitimate offspring of an unmarried woman is not such a child as the legislature intended to include in the use of the words "not having a child:" Overseers of Forest City v. Overseers of Damascus, 176 Pa. 116. See also opinion of Judge BUCHER in Buffalo Twp. v. Lewisburg Boro., 1 Pa. C. C. Reps. 121. This conclusion cannot be sustained upon the ground that such offspring was not in any sense of the word a child of the woman whose settlement was in question. It is sustainable, however, upon the ground that the intention of the legislature in putting in the qualifying clause "not having a child" was to prevent the application of the section to the case of a person who has a child or children that can be a burden to the poor district in consequence of his or her acquiring a settlement there. Apart from the analogy of the case of Overseers of Forest City v. Overseers of Damascus, 176 Pa. 116, to the case in hand, it is pertinent because it shows that the words of the section are not so plain and unambiguous as not to require or admit of construction. It would be a strange result, if it should be held that Cely McAlheney, the pauper, did not gain a settlement in the borough of Port Royal by her continuous service for eight years under a contract of hiring, but would have gained one if her married daughter, who could not possibly have gained a derivative settlement there through her, had been illegitimate. It is difficult to conclude that the legislature actually intended to make the mere fact of having offspring at the time of the hiring a conclusive bar against gaining a settlement by hiring and service in the one case and not in the other. It is an old rule of construction that where words in a statute are susceptible of two constructions, of which one will lead to absurdity, the other not, the latter is to be adopted, though it be not a literal construction but a liberal one: Philadelphia v. Ridge Avenue Pass. Railway Company, 102 Pa. 190 –197. The effects and consequences of the proposed construction of a law, as well as its reason and spirit, will be looked into in determining the legislative intent, which is the criterion by which all acts must be construed. Hence, if there is room for construction, the court will prefer that construction which is most consonant with the purpose for which the act was passed. There are cases where in order to carry out the obvious

intention of the legislature the word townships has been held to include the different municipal divisions relating to roads, where no special provision is made: Road in Milton, 40 Pa. 300. So also the cases are numerous in which the words of a statute, though general, have been given a limited construction, if necessary in order to carry out the intent of the law; as, for example, where the word " person " has been construed to mean natural person. As was said in Big Black Creek Improvement Company v. Commonwealth, 94 Pa. 450, here if anywhere the rule should apply that " statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and, where discovered, it ought to be followed with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute."

Looking at the question from every standpoint, we are of opinion that the long-settled construction of the statutory provision, which we may safely infer was in the mind of the legislature in adopting it, should not now be departed from; indeed, that it could not be departed from without producing absurd results which the legislature did not intend. We conclude that under the undisputed facts Cely McAlheney had acquired a legal settlement in the poor district of Port Royal borough. The case of directors of Allegheny County Home v. Overseers of South Buffalo Township, 26 Pittsburgh Legal Journal, 115, is not in point, for in that case the pauper had a legitimate child, who was still a minor and had not been emancipated.

The order is reversed at the costs of the appellees, and the record is remitted to the court below with directions to grant the order of removal, and to make such further order as to costs, charges and expenses as the circumstances may require.