## WALKER v. ROBERSON.

No. 782, Ind. T.    Opinion Filed September 10, 1908.

(97 Pac. 609.)

1.    INDIANS — Lands — Allotment — "Minor    Children"—Illegitimate Child.    Act. Cong. June 28, 1898, c. 517, sec. 16, 30 Stat. 501, authorizing any citizen of the Five Civilized Tribes to hold possession of such amount of agricultural or grazing land as would be his just and reasonable share of the lands of his nation or tribe, and to which his wife and minor children were entitled, and to continue to use and occupy the same and receive the rents of the same until allotment was made to him, did not authorize any such citizen to hold lands as a prospective allotment for an illegitimate child.

2.    SAME.    A member of the Creek tribe of Indians, who in violation of Act Cong. June 28, 1898, c. 517, sections 17, 18, 30 Stat. 502, held possession of lands in excess of that to which he, his wife, and minor children were entitled as allotments, acquired no rights thereto for the benefit of a child subsequently born to him, as against a Creek citizen who had prior to the birth of such child filed upon said land.

(Syllabus by the Court.)

*Appeal from the United States Court for the Western District of the Indian Territory, at Muskogee; Wm. R. Lawrence, Judge.*

Action by Mineola Walker against Silas Roberson.    Judgment for defendant, and plaintiff appeals.    Affirmed.

This suit was brought in the United States Court of the Indian Territory, at Muskogee, by appellant, Mineola Walker, against appellee, Silas Roberson.    Plaintiff by her bill asks for a declaration of trust.    Both plaintiff and defendant are minor Creek citizens, and both appear in this action by their fathers and natural guardians.    The evidence in the court below was taken before a special referee, who reported his findings of fact and conclusions of law in favor of plaintiff.    The trial court set aside the referee's report and decreed that the bill of plaintiff's be dismissed for want

of equity. From this judgment plaintiff appealed to the United States Court of Appeals of the Indian Territory, where the case was pending at the time of the admission of the state into the Union, and it is now in this court for final disposition under the provisions of the Enabling Act. The facts will be stated in the opinion.

*Raymond, Maxey & Runyan,* for appellant.
*Masterson Peyton,* for appellee .

HAYES, J. The subject-matter of this action is 160 acres of land, described as the E. ½ of the S. W. ¼ and the S.½ of the N. W. ¼ of section 23, township 12 N., range 15 E. This tract of land was first segregated from the public domain by W. W. Bray, an intermarried Creek citizen, who occupied the same for a period of about 15 years prior to the bringing of this suit. He fenced it, and broke out a portion of same, and placed it in a state of cultivation. About January 1, 1900, Bray sold his right to the possession of the land and his interest in the improvements thereon to Edward Walker, the father of plaintiff. Walker simultaneously rented the land to Bray, who continued in possession as his tenant. Edward Walker's family, at the time he purchased the interest of Bray in the land, consisted of himself and one child, for all of whom he had already taken allotments. Shortly after he had obtained possession of the land in controversy he visited the land office at Muskogee and attempted to file on the land for one Ben Walker, who was an illegitimate child of said Edward Walker and a woman by the name of Leah Kenard. The commission refused to permit Walker to file for this illegitimate child. The exact reason for such refusal is not clearly disclosed by the record. He returned home, and became sick, and was unable to visit the land office for some time. On the 31st day of May, 1900, Bob Roberson filed on the land for his son, Silas Roberson. On January 1, 1901, Mineola Walker, plaintiff, was born to Edward Walker and his wife. Shortly thereafter Ben Walker, the illegitimate child, acting through his uncle, filed upon

another tract of land some distance from the land in controversy Edward Walker was never married to the mother of Ben Walker, and Ben Walker has always resided with his mother, and not with his father. Edward Walker has assisted Ben's mother in clothing him, and testified that he recognized the boy as his son. After the birth of plaintiff, and after Ben Walker had filed upon other land, Edward Walker again visited the land office at Muskogee and endeavored to file upon the land in controversy for plaintiff; but the commission refused to permit him to do so for the reason that said land had already been filed upon. He endeavored to file a contest for plaintiff against defendant; but the commission refused to enter the contest or permit the same to be filed. The reason for this refusal is not disclosed by the record. The circumstances under which the father of defendant was permitted to file upon the land in controversy for defendant were that on the 30th day of May, 1900, he went into the locality where this land is located and inspected a tract of land that adjoins this land. The land he inspected was not in cultivation and was unimproved, and a portion of the same was timber land; whereas the land in controversy was at that time improved and consisted of prairie land. He returned to the land office at Muskogee, and on May 31, 1900, attempted to file upon the land he had inspected; but in doing so he by mistake gave the description of the land in controversy. He represented to the commission that the land upon which he was offering to file was unimproved and not claimed by any one, which was true of the land he had inspected and intended to file on, but not true as to the land he described to the commission and did file upon. Edward Walker made several efforts both to file upon the land and to enter a contest thereon against defendant, in behalf of his child, plaintiff herein, but was always refused permission by the commission to do so. A patent was issued to defendant for the land in controversy, and the commission arbitrarily filed plaintiff upon other land, which she refuses to accept. Upon these facts, which have been here stated substantially as found by the referee, plaintiff contends that de-

fendant holds said land as a trust for her, and that the court should so decree, and direct that defendant convey all his right, title, and interest therein to her.

The report of the referee on findings of fact and conclusions of law is quite lengthy, and it will serve no useful purpose to set out the same in full. The report was set aside by the court, and that action of the court is the basis of most of the assignments of error made by appellant; but under our view of the case there is but one question presented by the record that demands our consideration, and that question is: Did Edward Walker, on the 31st day of May, 1901, the day on which defendant filed on the land in controversy, have a right to hold said land for the illegitimate child, Ben Walker? Edward Walker, prior to that time, had taken allotments for himself, his wife, and his only legitimate child. Plaintiff had not then been born.

Congress, by Act June 28, 1898, c. 517, 30 Stat. 495, known as the "Curtis Act," provided that as soon as the roll of citizenship of any one of the Five Civilized Tribes should be completed as provided by law, and a survey of the land of said nation or tribe had been made, the Dawes Commission should proceed to allot the exclusive use and occupancy of the surface of the lands of said nation or tribe among the citizens thereof, giving to each, so far as possible, his fair and equal share thereof. By section 16 of said act it was provided that, where any citizen should be in possession of only such amount of agricultural or grazing lands as would be his just and reasonable share of the lands of his nation or tribe and that to which his wife and minor children were entitled, he might continue to use the same and receive the rents therefrom until allotment had been made to him. It is under this provision of the law that plaintiff claims her father, Edward Walker, was rightfully holding the land in controversy when defendant filed upon same; that he was then holding the same for the illegitimate child, Ben Walker, and continued so to hold it until her birth, after which he held it for her. Does the

language of this section, which authorized the father to hold and receive the rents from the lands to which his children were entitled as their allotments until allotments were made to him, include the right to hold and receive the rents for the prospective allotment of an illegitimate son? In other words, do the words "minor children," in this section of the act, include both minor legitimate children and minor illegitimate children?

The succeeding section of the same act reads:

"That it shall be unlawful for any citizen of any one of said tribes to inclose or in any manner, by himself or through another, directly or indirectly, to hold possession of any greater amount of land or other property belonging to such nation or tribe than that which would be his approximate share of the lands belonging to such nation or tribe, and that of his wife and his minor children as her allotment herein provided; and any person found in such possession of lands or other property in excess of his share and that of his family as aforesaid, or having the same in any any manner inclosed, at the expiration of nine months after the passage of this Act shall be deemed guilty of a misdemeanor."

The language of this section clearly indicates what children are referred to in this and the preceding sections. By using the language, "that a person should not hold land and other property in excess of his share and that of his family aforesaid," it was clearly intended that a citizen should be permitted to hold land sufficient for the allotments of himself, wife, and minor children, who were members of his family. An illegitimate son, that does not live with the putative father, and to whose mother the putative father has never been married, is not a member of such man's family, and he is not one of the children referred to by said section, for whom the father could hold land and receive rents therefrom until allotment. To have provided that the father who had never legitimated or adopted his illegitimate child, and of whose family the illegitimate child had never become a member, should have the right to hold the land of such child and receive the rents therefrom, would have worked a great injustice. The father who does not support his illegitimate child, and who has

never made such child a member of his family by legitimation, has no right in law to receive the rents and profits from the property of such child; but the effect of this act, if the word "children," as used therein, includes an illegitimate child, would have been to authorize the putative father to hold the lands of the illegitimate child and receive the rents therefrom, although he contributed nothing whatever to the support of such child. The rule, under the great weight of authorities, is that the word "child" or "children," used as a description in a statute, deed of conveyance, or a will, must be taken *prima facie* to mean legitimate child or children. *McDonald v. Railway Company,* 144 Ind. 459, 43 N. E. 447, 32 L. R. A. 309, 55 Am. St. Rep. 185; *Overseers of Poor of Forest City v. Overseers of Poor of Damascus Township,* 176 Pa. 116, 34 Atl. 351; *Miller et al. v. Miller et al.,* 79 Hun. 197, 30 N. Y. Supp. 116; *Johnstone v. Taliaferro,* 107 Ga. 6, 32 S. E. 931, 45 L. R. A. 95; *William M. Hall v. David Cressey,* 92 Me. 514, 43 Atl. 118; *Charles F. Orthwein v. Charles W. Thomas et al.,* 127 Ill. 554, 21 N. E. 430, 4 L. R. A. 434, 11 Am. St. Rep. 159.

While the word "child" or "children," in the cases cited, is not used in any of them in the exact relation that it is used in the statute under consideration in this case, the cases cited cover various subjects, and clearly show the rule to be that the word "children," without qualifying expressions, in a statute, deed of conveyance, or a will, does not include an illegitimate child. The word "children," as used in some statutes, has been construed to include an adopted child, or a child born out of lawful wedlock and afterwards legitimated; but that question is not involved in the case at bar. No legitimation or adoption of Ben Walker by his natural father, Edward Walker, is shown by the record. It is true the father contributed to the expense of his clothing and recognized him as his son; but these acts constituted neither an adoption nor a legitimation under the laws of the jurisdiction where this case arose and was tried. Section 2525 of Mansfield's Digest of the Statutes of Arkansas (Ind. T. Ann. St. 1899, § 1823), in force in the Indian Territory, provides that when a

man, who had by a woman a child or children, afterwards inter-married with her and recognized such children to be his, they should be deemed and considered legitimate. This was the only way legitimation of an illegitimate child could be effected under the laws in force in the Indian Territory, and no statute provid-ing for the adoption of children existed in that jurisdiction. The adoption of children is a practice unknown to the common law, and a child could be legitimated only by special act of Parliament. Both practices are now regulated in most of the states of the Union by general statutes. If Edward Walker ever adopted or legiti-mated Ben Walker as his child under any law of the Creek tribe of Indians, such fact is not made to appear in the record of this case. If there existed any law of the Creek Nation under which the acts of Edward Walker, consisting of his contributing toward the expense of clothing the illegitimate child, Ben Walker, and in his recognizing him as his son, operated as an adoption or legiti-mation of said child, this court is ignorant of such tribal law. No such law has been pleaded or proved, and this court cannot take judicial knowledge of such law, if it exists. *Hockett et al. v. Alston,* 110 Fed. 910, 49 C. C. A. 180.

Plaintiff's father, therefore, had no right under the act of Congress of June 28, 1898, to hold the land in controversy on the 31st day of May, 1900, and under sections 17 and 18 of said act each day that he did so he was guilty of a misdemeanor and subject to a fine of not less than $100. When defendant filed upon the land, it was a part of the public domain of the Creek Nation, and subject to be selected and filed upon by any member of the Creek tribe of Indians, and neither plaintiff nor plain-tiff's father had any interest therein. It is true that defendant's filing upon same was through a mistake; but upon learning of the mistake he made no effort to have his filing canceled, or to release the same, and he has since that time accepted a patent to the land. The act of the Dawes Commission in permitting defendant to select said land as his allotment violated no right of plaintiff, or of plaintiff's father, through whom plaintiff claimed the right

to file upon the land. The allotment of the land by the Dawes Commission to defendant was ratified and confirmed by section 6 of what is known as the "Creek Agreement" (Act March 1, 1901, c. 676, 31 Stat. 863); and, as has been before stated, a patent for said land has been delivered by the government to defendant, conveying said land to him.

It follows that plaintiff's case was without equity, and should have been dismissed; and the judgment of the trial court is therefore affirmed.

All the Justices concur.